O

# United States District Court
# Central District of California

| | |
|---|---|
| LASER SPINE INSTITUTE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>PLAYA ADVANCE SURGICAL INSTITUTE, LLC d/b/a CALIFORNIA LASER SPINE INSTITUTE; SILICON BEACH MEDICAL CENTER INC. d/b/a CALIFORNIA LASER SPINE INSTITUTE, and YOUNG SUN YI d/b/a CALIFORNIA LASER SPINE INSTITUTE<br><br>Defendants. | Case No. 2:18-cv-06920-ODW (JPRx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST ALL DEFENDANTS [53]** |

## I. INTRODUCTION

Before the Court is a Motion for Default Judgment ("Motion") filed by Laser Spine Institute, LLC ("Plaintiff") against Playa Advance Surgical Institute, LLC ("Playa"), Silicon Beach Medical Center Inc. ("Silicon") and Young Sun Yi ("Yi") (collectively, "Defendants"). (Mot. for Def. J. ("Mot."), ECF No. 53.) Defendants do

not oppose the Motion. For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion.[1]

## II. BACKGROUND

For many years, Plaintiff provided endoscopic procedures across the country to treat various spinal conditions. (Compl. ¶¶ 8–11, ECF No. 2.) Defendants provide the same types of services. (Compl. ¶ 22.) Defendant Yi is a surgeon and the chief executive officer for Defendants Playa and Silicon, corporations conducting business in California. (Compl. ¶ 5.)

Plaintiff owns U.S. Trademark Registration Nos. 3,478,447 (the "'447 Registration") and 4,316,307 (the "'307 Registration") for the mark "LASER SPINE INSTITUTE" (the "LSI Mark") in connection with "[m]edical services" and "[m]inimally invasive surgical services, namely, spinal therapies," respectively. (Compl. Ex. A, ECF No. 2-1; Compl. Ex. B, ECF No. 2-2.) Plaintiff also owns a copyright in certain materials including text, photographs, compilations, and artwork (the "Copyrighted Material") that were allegedly depicted on Plaintiff's website, www.laserspineinstitute.com. (Compl. ¶ 19.)

Notably, Plaintiff's website is no longer accessible on the Internet. Instead, the website Plaintiff references in pleadings and briefs, www.laserspineinstitute.com, automatically redirects to a new website, www.lsi-assignee.com (the "Assignee's Website"). *Assignment for the Benefit of Creditors for Laser Spine Institute*, https://www.lsi-assignee.com (last visited September 21, 2020). The Assignee's Website explains that "[o]n March 14, 2019, Laser Spine Institute, LLC . . . executed an irrevocable assignment for the benefit of creditors (also known as an 'ABC')." *Id.* In other words, it appears that Plaintiff has voluntarily transferred its assets to an assignee for the purposes of liquidating the assets, paying Plaintiff's creditors, and winding down Plaintiff's business. *Id.*

---

[1] After carefully considering the papers filed in support of the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

Defendants' website, www.californialaserspine.com, uses language, logos, and marks which allegedly infringe on Plaintiff's intellectual property rights. (Compl. ¶ 26.) For example, much of Defendants' website employs the Copyrighted Material, verbatim, in describing symptoms associated with conditions that both Plaintiff and Defendants treat. (Compl. ¶ 31; *see* Mot. Exs. L (ECF No. 53-13), M (ECF No. 53-14), N (ECF No. 53-15), O (ECF No. 53-16).) Plaintiff further cites logos on Defendants' website displaying the names "California Laser Spine Institute" and "California Laser Spine" as evidence of Defendants' infringement. (Compl. ¶¶ 24–26.) These logos are prominently displayed in Defendants' office, on their written promotional materials, and online. (*See* Mot. Exs. H (ECF No. 53-9), I (ECF No. 53-10), J (ECF No. 53-11), L, M.) Plaintiff also cites a large sign above Defendants' office, styled CALIFORNIA LASER SPINE INSTITUTE, as evidence of Defendants' infringement. (Compl. ¶ 23.)

On July 23, 2018, Plaintiff sent Defendants a letter instructing Defendants to remedy their ongoing violations, but Defendants failed to respond or stop infringing. (Compl. ¶¶ 34–35.) On August 13, 2018, Plaintiff filed its Complaint alleging that Defendants infringed Plaintiff's Copyrighted Material and its LSI Mark. (*See generally* Compl.) Based on these allegations, Plaintiff asserts six claims against Defendants: (1) infringement of the '447 Registration under 15 U.S.C. § 1114(1); (2) infringement of the '307 Registration under 15 U.S.C. § 1114(1); (3) unfair competition and false designation of origin under 15 U.S.C. § 1125(a); (4) unfair competition under California Business and Professions Code § 17200, *et. seq.*; (5) common law trademark infringement; and (6) copyright infringement under 17 U.S.C. §§ 501, *et. seq.* (Compl. ¶¶ 37–93.) Plaintiff prays for injunctive relief, statutory damages, post-judgment interest, and recovery of attorneys' fees and costs. (Compl. Prayer for Relief.)

Defendants filed an Answer on October 19, 2018. (ECF No. 18.) On September 18, 2019, the Court granted a motion for Defendants' former counsel to

withdraw, ordering Playa and Silicon to retain counsel within forty-five days and advising that non-compliance with Court orders may result in entry of a default judgment. (Order Granting Mot. for Leave to Withdraw as Counsel of Record ("Withdrawal Order"), ECF No. 39.) Defendants have since failed to comply with the Withdrawal Order or participate in this action, leading the Court to strike Defendants' Answer and the Clerk to enter default. (Order Granting Pl.'s Mot. to Strike Defs.' Answer, ECF No. 49; Default by Clerk, ECF No. 50.)

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) authorizes a district court to grant default judgment after the Clerk enters default under Rule 55(a). Local Rule 55-1 requires that the movant establish (1) when and against which party default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is a minor, incompetent person, or active service member; and (4) that the defaulting party was properly served with notice.

A district court has discretion whether to enter default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Upon default, the defendant's liability generally is conclusively established, and the well-pleaded factual allegations in the complaint are accepted as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987). In exercising its discretion, a court considers several factors, including (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## IV. DISCUSSION

The Court finds the requirements of Local Rule 55-1 are satisfied here. (*See* Decl. in Supp. of Pl.'s Mot. for Entry of Final Default ("Kastner Decl.") ¶¶ 2–10, ECF No. 53-1.) Thus, the Court considers the *Eitel* factors below.

Further, while Plaintiff's Complaint asserts six claims, the monetary relief requested by Plaintiff is based only on Plaintiff's sixth claim for copyright infringement. (Mot. 15–17.) Plaintiff's requested injunctive relief stems from the same copyright claim and Plaintiff's first and second claims for federal trademark infringement. (Mot. 17–19, 22–24.) Because Plaintiff's Motion does not adequately address claims three through five, and Plaintiff's prayer is not impacted by those claims, the Court only addresses Plaintiff's first, second, and sixth claims.

### A. *Eitel* Factors

#### 1. Possibility of Prejudice to Plaintiff

The first *Eitel* factor examines whether the plaintiff will be prejudiced if default judgment is not granted. *Eitel*, 782 F.2d at 1472. A plaintiff suffers prejudice if there is no recourse for recovery absent default. *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).

Here, Defendants violated Court orders, resulting in the Court striking their Answer and the Clerk entering default. (Order Granting Pl.'s Mot. to Strike Defs.' Answer; Default by Clerk.) Defendants have since failed to appear, and Plaintiff has therefore been unable to prevent Defendants' ongoing infringement or recover damages. As litigation cannot proceed due to Defendants' failure to defend, the only way for Plaintiff to obtain relief is through default judgment. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (explaining that plaintiff "will likely be without other recourse for recovery" if default judgment is not entered). Hence, this factor favors entry of default judgment.

### *2. Merits of Plaintiff's Substantive Claim and Sufficiency of Complaint*

The second and third *Eitel* factors require that the plaintiff "state a claim on which the [plaintiff] may recover." *Castworld*, 219 F.R.D. at 499 (quoting *PepsiCo*, 238 F. Supp. at 1175).

To state a copyright infringement claim, a plaintiff must allege (1) ownership of a valid copyright and (2) that the defendant violated an exclusive right of the copyright holder. 17 U.S.C. § 106. An infringing entity's officer can be vicariously liable if he or she has the (1) "right and ability to supervise the infringing activity" and (2) "a direct financial interest" in the activity. *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1071 (9th Cir. 2013) (citations omitted).

Plaintiff asserts that it is the exclusive owner of the Copyrighted Material and that Defendants infringed Plaintiff's exclusive rights by copying, distributing, and displaying the Copyrighted Material without Plaintiff's consent, in violation of 17 U.S.C. § 501. (Compl. ¶¶ 85–90, Ex. C (ECF No. 2-3).) Defendants' website displays much of the Copyrighted Material, verbatim, without permission. (Compl. ¶¶ 29–32.) As to Yi's vicarious infringement, Plaintiff alleges that Yi is Playa and Silicon's chief executive officer who authorized the infringing material and benefitted from the infringement. (Compl. ¶¶ 5, 34–36.) These allegations set forth the elements and factual content necessary to plead Plaintiff's copyright claim against all Defendants.

Turning to Defendants' first and second claims for trademark infringement, Plaintiff must show that, without consent, Defendants "used in commerce a reproduction or copy of a registered trademark in connection with the sale or advertising of any goods or services, and that such use is likely to cause confusion, mistake, or deceive customers." 15 U.S.C. § 1114(a)(1). "[T]he critical determination is whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be confused as to who makes what product." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008) (internal quotation marks and citations

omitted). In *AMF Inc. v. Sleekcraft Boats*, the Ninth Circuit set forth eight factors a court should consider in determining whether two marks are confusingly similar. 599 F.2d 341 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003). The factors are: (1) the strength of the mark, (2) the proximity or relatedness of the goods or services, (3) the similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) the type of goods or services and the degree of care likely to be exercised by the purchasers, (7) defendant's intent in selecting the mark, and (8) likelihood of expansion of product lines. *Id*. at 348–49.

Here, in addition to the facts in support of Plaintiff's copyright claim, Plaintiff attaches both trademark registrations to its Complaint, as well as the allegedly infringing marks Defendants used on their signage, marketing materials, and website. (*See* Compl. Exs. A, B, E (ECF No. 2-5), F (ECF No. 2-6), G (ECF No. 2-7).) Plaintiff's Complaint provides allegations and visual evidence demonstrating that Defendants' infringing marks were likely to confuse customers, and that Plaintiff never consented to Defendants' use. (Compl. ¶¶ 39–40, 49–51.) In particular, Plaintiff sufficiently alleges that: (1) the LSI Mark was well-known and distinct (Compl. ¶¶ 9–14); (2) the parties' services were closely related (Compl. ¶¶ 8–9, 22); (3) the parties' marks were similar (Compl. ¶¶ 10–15, 23–26); (4) the parties used the same marketing channels (Compl. ¶¶ 12, 24); and (5) Defendants intentionally infringed the LSI Mark (*see* Compl. ¶¶ 10–15, 23–26, 28, 43, 54). These allegations set forth the necessary elements and factual content to satisfy Plaintiff's claims under 15 U.S.C. § 1114.

Hence, the second and third *Eitel* factors favor entry of default judgment.

### 4. *Sum of Money at Stake*

The fourth *Eitel* factor examines whether the sum of money at stake is proportionate to the harm caused by the defendant. *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010). Plaintiff's prayer for

statutory copyright infringement damages is set forth in 17 U.S.C. § 504, and recovery of its fees and costs is permitted under 17 U.S.C. § 505. The damages requested are therefore proportionate to Defendants' wrongful conduct and the consequential harm to Plaintiff. Hence, this factor favors entry of default judgment.

***5. Possibility of Disputed Material Facts***

The fifth *Eitel* factor examines whether there is likelihood of a dispute of material facts. *Eitel*, 782 F.2d at 1472. When deciding whether to grant default judgment, the court accepts all well-pleaded facts as true. *Televideo*, 826 F.2d at 917–18. As such, when a plaintiff pleads the facts necessary to prevail on its claims, there is little possibility of dispute over material facts. *Castworld*, 219 F.R.D. at 498. Here, as discussed above, Plaintiff's Complaint alleges facts sufficient to prevail on each of its claims. Because the Court must accept Plaintiff's allegations as true, and there is no indication that Defendants will reappear in this action, a dispute of material facts is unlikely. Hence, this factor favors entry of default judgment.

***6. Possibility of Excusable Neglect***

The sixth *Eitel* factor considers whether the defendant's actions are due to excusable neglect. *Eitel*, 782 F.2d at 1472. There is little possibility of excusable neglect "where a defendant fails to appear and respond" and "default judgment is appropriate" because that defendant's actions make "a decision on the merits impossible." *Coach Servs., Inc. v. YNM, Inc.*, No. 2:10-CV-02326-JST (PLAx), 2011 WL 1752091, at *4 (C.D. Cal. May 6, 2011). Here, there is no possibility of excusable neglect, as Defendants have openly flouted Court orders and refused to participate in this litigation despite being advised that their violations may result in default judgment. As Defendants have received ample warnings and sufficient notice concerning the grounds for default judgment, this factor favors entry of default judgment.

### *7. Policy for Deciding Case on the Merits*

There is a strong policy for deciding cases on their merits "whenever reasonably possible." *Eitel,* 782 F.2d at 1472. But a defendant's failure to appear or respond makes a decision on the merits "impossible." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1083 (C.D. Cal. 2012). Because Defendants have not appeared after their Answer was stricken, this factor favors default judgment.

In summary, all of the *Eitel* factors favor granting default judgment; thus, the Court **GRANTS** Plaintiff's Motion as to entry of default judgment.

## B. Remedies

Plaintiff seeks statutory damages for copyright infringement, injunctive relief based on copyright and trademark infringement, post-judgment interest, and attorneys' fees and costs. (Mot. 15–19, 22–24.)

### *1. Statutory Damages*

Plaintiff argues that it is entitled to $150,000 in statutory damages for its copyright claim based on Defendants' willful infringement. (Mot. 15–17.) Alternatively, Plaintiff requests $30,000 in statutory damages if the Court does not find Defendants' infringement was willful. (Mot. 17.)

"[A] plaintiff may recover statutory damages 'whether or not there is adequate evidence of the actual damages suffered by the plaintiff or of the profits reaped by defendant.'" *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1337 (9th Cir. 1990) (quoting *Harris v. Emus Recs. Corp.*, 734 F2d 1329, 1335 (9th Cir. 1984)). "The court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Columbia Pictures Tel., Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001) (citation omitted).

Under the Copyright Act, a plaintiff may elect statutory damages over actual damages and profits "in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). Additionally, a plaintiff who demonstrates

that infringement was willful may seek statutory damages of up to $150,000 per copyrighted work. 17 U.S.C. § 504(c)(2). The Ninth Circuit has defined "willful" as "knowledge that the defendants' conduct constituted an act of infringement." *Peer Int'l Corp.*, 909 F.2d at 1335 (citation omitted). A plaintiff satisfies its burden of proving willfulness "by showing [the] defendant knew or should have known it infringed [the plaintiff's] copyright." *UMG Recordings, Inc. v. Disco Azteca Distrib., Inc.*, 446 F. Supp. 2d 1164, 1173 (E.D. Cal. 2006) (citation omitted).

Here, Plaintiff presents substantial evidence that much of Defendants' website replicated the Copyrighted Material verbatim. (*See* Mot. Exs. L, M, N, O.) But even accepting as true that Defendants intentionally copied several blocks of text from Plaintiff's website, Plaintiff provides no evidence to show that Defendants knew or should have known they were *infringing Plaintiff's copyright*. Therefore, Plaintiff fails to support its request for $150,000 in statutory damages under 17 U.S.C. § 504(c)(2).

However, Plaintiff does provide ample support for its request for statutory damages in the amount of $30,000, as Plaintiff secured registration in the Copyrighted Material in 2014, prior to all alleged infringement. (*See* Compl. Ex. C); 17 U.S.C. § 504(c)(1). Further, despite having notice of this action and the Motion, Defendants have not appeared to rebut Plaintiff's showing. Accordingly, Plaintiff is entitled to $30,000 in statutory damages for copyright infringement.

### 2. *Injunctive Relief*

Plaintiff requests an injunction: (1) requiring Defendants to permanently remove www.californialaserspine.com and all subpages from the Internet and cease use of that domain name; (2) enjoining Defendants from using "California Laser Spine Institute" or "California Laser Spine" in connection with offering any goods or services; and (3) ordering Defendants to cease holding themselves out as "California Laser Spine Institute." (*See* Pl.'s Proposed Order ¶¶ 2–3, ECF No. 53-21.)

A permanent injunction may only be entered where the plaintiff demonstrates: (1) that it has suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Here, a permanent injunction is inappropriate. Plaintiff has executed an ABC to sell off its assets and wind down its business. *See* Assignee's Website. Plaintiff's website, upon which it bases its claim for infringement and request for injunctive relief, is no longer accessible. *Id.* With Plaintiff ceasing its operations, no irreparable injury will occur to Plaintiff's reputation because there is no continuing reputation to protect. Similarly, the balance of hardships weighs in Defendants' favor, as denying an injunction can cause no hardship to Plaintiff if it is no longer competing with Defendants for business. Further, the public interest would not be served by a permanent injunction, as consumers are not likely to be confused between the parties' services. For these reasons, Plaintiff's ABC defeats its request for injunctive relief. *See generally eBay*, 547 U.S. at 391. The request for injunctive relief is **DENIED**.

### 3. *Attorneys' Fees, Costs, and Interest*

Plaintiff seeks to recover its costs and attorneys' fees under 17 U.S.C. § 505, which vests in courts the discretion to award "the recovery of full costs" and reasonable attorney fees. (Mot. 15-17.) In a motion for default judgment, where attorneys' fees are sought under a statute, fees are generally calculated according to the schedule provided by the court. C.D. Cal. L.R. 55-3. Attorneys may request fees in excess of the schedule, as Plaintiff has done here in requesting $29,111.65 in fees. *Id.* When a party makes such a request, "the court is obligated to calculate a 'reasonable' fee in the usual manner [using the 'lodestar method'], without using the fee schedule as a starting point." *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152 (9th Cir. 2018). The "lodestar" method multiplies the hours reasonably expended by a

reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A court may consider several pertinent factors in determining a fee award's reasonableness. *Langer v. Butler*, No. 19-cv-0829-DOC (JDEx), 2019 WL 6332167, at *8 (C.D. Cal. Aug. 27, 2019) (citing *Quesada v. Thomason*, 850 F.2d 537, 539 n.1 (9th Cir. 1988) (listing twelve factors)).[2]

The Court, in its discretion, finds that Plaintiff is entitled to its costs and reasonable attorneys' fees under 17 U.S.C. § 505.[3] However, Plaintiff offers insufficient documentation and argument for the Court to conduct a lodestar analysis. Plaintiff instead attaches invoices that list the hours spent on tasks and the accompanying charges but does not address the necessity or reasonableness of these charges. (*See* Pl.'s Invoices, ECF No. 53-19.) Plaintiff conducts no lodestar analysis, and Plaintiff's counsel offer no evidence to justify their billing rates, providing neither cases approving their rates nor cases approving comparable rates for lawyers in similar practice areas and markets. (Mot. 19–20.) The Court therefore determines the amount of recoverable fees under Local Rule 55-3. *Trs. of Operating Eng'rs Pension Tr. v. W. Coast Boring, Inc.*, No. 2:19-cv-06546-ODW (PLAx), 2020 WL 1875454, at *3 (C.D. Cal. Apr. 15, 2020) (calculating fee award under Local Rule 55-3 despite request for lodestar analysis, noting that "far from disregarding [Plaintiff's] request, the Court heard the request, analyzed the proffered billing records, and found them inadequate for a lodestar analysis." (citations omitted)).

Pursuant to Local Rule 55-3, for damage awards between $10,00.01 and $50,000, the fee schedule provides for a fee award equal to $1200 plus 6% of damages

---

[2] The factors are: (1) The time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of accepting the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorney(s); (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Quesada*, 850 F.2d at 539 n.1.

[3] The Court need not address Plaintiff's alternative argument that it is entitled to recover the same fees under 15 U.S.C. § 1117(a). (Mot. 24–25.)

over $10,000, exclusive of costs. C.D. Cal. L.R. 55-3. Because a monetary award of $30,000 is appropriate, the Court awards Plaintiff $2400 in attorneys' fees ($1200 + (6%) * ($30,000 – $10,000) = $2400). *See id.* Plaintiff also documents $406.67 in costs, which the Court awards to Plaintiff. (Pl.'s Invoices 13.)

Finally, the Court awards post-judgment interest, which shall be recoverable on all aspects of the judgment including the amounts awarded for damages, fees, and costs. *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290–91 (9th Cir. 1995). Interest will begin to accrue on the date judgment is entered at the applicable statutory rate. 28 U.S.C. § 1961(a).

Plaintiff is thus awarded post-judgment interest and $2806.67 in fees and costs.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion. (ECF No. 53.) The Court **GRANTS** Plaintiff's request for statutory copyright infringement damages, attorneys' fees, costs, and post-judgment interest, but **DENIES** Plaintiff's request for injunctive relief and for fees in excess of Local Rule 55-3's schedule. Plaintiff is awarded **$32,806.67**. A separate Judgment will issue.

**IT IS SO ORDERED.**

September 23, 2020

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**